UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Armin Ryan, | : | Case No.  3:08CV0292 |
| | : | |
| Petitioner | : | Judge Peter C. Economus |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Stuart Hudson, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| | : | |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his conviction pursuant to a jury trial of one count of aggravated burglary, upon which he is serving a sentence of nine years incarceration; one count of kidnapping, with specifications for having sexual motivation, for having been a sexually violent predator and for failure to release the victim in a safe place unharmed, upon which he was sentenced to an indefinite prison term of a minimum of fifteen years to life; and one count of rape, with a specification for having been a sexually violent predator, upon which he was sentenced to a minimum term of fifteen years to life, the sentences on the latter two counts to be aggregated and served consecutively as if they were a single minimum term, and the sentence on the aggravated burglary count to run concurrently with

1

those two sentences, as well as to one imposed in another case by a court in Lucas County.[1]

The petitioner appealed his convictions to the Ohio Sixth District Court of Appeals, alleging the following two assignments of error:

> I. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Constitution of the State of Ohio.
>
> II. The evidence provided in this case was insufficient to support the convictions, and even if found to be sufficient for the jury's consideration, the convictions were ultimately against the manifest weight of that evidence.

The facts in petitioner's case were summarized by the state appellate court in pertinent part as follows:

> On March 17, 2005, the Wood County grand jury indicted appellant on the aforementioned one count of aggravated burglary; one count of robbery; one count of kidnapping with specifications that appellant is a repeat violent offender and a sexually violent predator, and a sexual motivation specification; and one count of rape with repeat violent offender and a sexually violent predator specifications. The grand jury also indicted appellant on a fifth count, specifically, one count of corrupting another with drugs in violation of R.C. 2925.02(A)(1), a felony of the second degree. The state later moved to dismiss the repeat violent offender specifications and Count 5 (corrupting with drugs charge) of the indictment. The trial court granted both motions. On May 17, 2005, the case proceeded to trial, at which the following evidence was presented.
>
> During the early morning hours of March 5, 2005, appellant approached the victim, Tracy Gahan, who was standing at the jukebox in Mad Anthony's Bar in Waterville, Wood County, Ohio. She and appellant talked for a while until "last call" was announced, at which time appellant invited Gahan to play cards at the apartment above the bar. It is at this point that the testimony of the events that ensued differ significantly. Appellant testified that he and Gahan ended up in the

---

[1] Petitioner was also originally charged with another specification to the kidnapping charge, for being a repeat violent offender, as well as one count of corrupting another with drugs, each of which was dismissed by the court before trial. He was also originally charged with one count of robbery, upon which he was acquitted.

2

bathroom of the apartment, and Gahan performed fellatio on him. Gahan, however, testified that she went to the bathroom, and appellant walked in on her as she was washing her hands.

In any event, appellant and Gahan subsequently left the apartment together; however, the reason for doing so is in dispute. Appellant claimed Gahan inquired about getting cocaine and promised him "a good time" if he did. Gahan, on the other hand, testified that appellant suggested that they go to the "East Side" to get "a bag of weed" and some playing cards. Gahan further stated that it was not abnormal for her and her friends to play cards after the bar closed.

After they got in appellant's vehicle, appellant headed toward Perrysburg. Along the way, Gahan needed to use the restroom so appellant stopped at a gas station. Appellant went to the restroom, too. Back in appellant's vehicle, appellant told Gahan he purchased some cocaine from a friend he saw in the gas station. Appellant later testified that he bought aspirin because he thought Gahan was drunk and would not know the difference. Gahan said she "did not want to be around that" and started to get out of the vehicle. She said that at this point appellant reached over, shut the door, and told her not to "freak out" because "he wasn't going to do it." She maintained appellant told her that they were going to a friend's house to play cards.

Appellant proceeded to take Gahan to a trailer in Perrysburg under the pretense of playing cards. Gahan said that appellant claimed the trailer was his. Appellant, however, maintained that the trailer was owned by a friend and that he could utilize it anytime. Once inside the trailer, appellant testified that he and Gahan went to the back bedroom, talked for a while, and started kissing. He further stated that Gahan indicated she wanted to do some cocaine, so they went to the bathroom and "did a line." After that, appellant claimed that they ended up back in the bedroom where he had oral sex with her, and that they then had intercourse. Appellant stated that at this juncture, Gahan complained she was not getting "high," so they left and "drove out the same way [they] came in."

The following testimony, as offered by Gahan, presents a markedly different version of the events of that occurred after she and appellant entered the trailer on the morning of March 5, 2005. Once inside the trailer, appellant pulled Gahan into the bathroom, told her to sit on the ledge of the tub, and pulled out the cocaine. When Gahan tried to get up and leave, appellant pushed her back down and told her she was not going anywhere. Appellant licked his thumb, put it in the powder, and rubbed his thumb on her gums. He

3

told Gahan, "Now you can't go to the cops because you have cocaine in your system. They won't believe you." Appellant then pulled her into a bedroom, pushed her down, and started taking off his pants. Gahan started crying and tried to get away, but she could not escape. Appellant took off her shoes, pulled down her pants, and started "poking [her] vagina" with his penis. As she tried to "scootch away from him," appellant penetrated her a "little bit." Appellant then suddenly sat back on his knees and asked Gahan if she was scared. When Gahan responded "Yes.", appellant said, "Good. That will teach you not to leave a bar with someone you don't know."

Appellant then allowed Gahan to go to the bathroom, but followed her in, and forced his penis into her mouth. He then pulled her by the hair back to the bedroom and pushed her down as she tried, unsuccessfully, to hold onto the door frame. Appellant then "put his penis inside" Gahan. She again tried to move away, but couldn't because he put one hand on her neck and the other over her mouth and nose. Appellant told Gahan that he would take away his hand if she would be quiet, but she started crying and asked him to stop. At this point, appellant placed something "cold and round" at her temple and told her that if she was not quiet, he would kill her and "splatter [her] brains across the wall and bury [her] where nobody could find [her]." Gahan said she stopped fighting him, and he continued to rape her.

Subsequently, appellant let Gahan go to the bathroom again, but followed her and once more forced his penis into her mouth. Appellant then compelled her to snort what he initially told her was cocaine, pulled her back into the bedroom, and raped her again. When she resisted appellant's attempt to rip off her shirt, he responded, "It doesn't matter because when I'm done, I'm going to make you run down the street naked and shoot you in the back anyways." In response to appellant's threats, Gahan stopped fighting and pretended to enjoy herself. After appellant was done, he let her get dressed, and they left.

On the way to Waterville, in an attempt to escape, Gahan told appellant she needed cigarettes. Appellant stopped at a gas station, and they both went inside. Appellant stood "real close" to Gahan while she waited in line and told her if she tried anything, he would kill her and everyone there. Gahan stalled and said she needed to use to restroom. When she asked the clerk for the key, she mouthed the words, "Call the police." Satisfied that the clerk understood, Gahan walked outside toward the restroom and appellant followed.

The gas station clerk then called 911 and told the dispatcher that a

4

>customer needed the police. From inside the bathroom, Gahan pounded on the door that connected to the store. The clerk let her in, and Gahan, who was shaking and crying, told her why she needed the police and provided appellant's license plate number. Appellant left the scene during this time. After police officers arrived, they took Gahan to the hospital where she went through a rape examination. The nurse who examined Gahan testified that she was visibly upset and shaken. She also testified that she had found bruises on Gahan's legs and signs of blunt force trauma in the vaginal area. Afterwards, Gahan was transported to the police station where she was interviewed and identified the trailer to which appellant had taken her. During the interview, Gahan had to excuse herself several times because she felt ill and thought she was going to vomit.
>
>Officers subsequently searched the trailer and noticed that the front door was damaged. Although appellant's witness, who had previously owned the trailer, testified that he had given appellant permission to enter the trailer, a second witness, Katrina Vanderhorst, testified that she owned the trailer on the night in question and that she had not given anyone permission to enter the trailer. Vanderhorst further testified that the door frame had not been broken prior to March 5, 2005.
>
>The officers proceeded to collect evidence from inside the trailer, which included two areas in the bedroom with bodily fluids on them. The officers also found a broken earring, which belonged to Gahan, on the bedroom floor. The next day, Gahan identified appellant in a photo array. Officers later went to appellant's home to arrest him, but he was not there. Upon consent of the homeowner, officers searched the residence and recovered a pair of boots with a sole pattern similar to an impression left on the carpet in the trailer. One of the officers also saw the vehicle with the license plate number Gahan had given them, and inside, found a wallet which contained "personal items and papers and cards" belonging to appellant.

On September 29, 2006 the state appellate court affirmed the judgment of conviction and sentence.

On October 30, 2006 petitioner appealed the state appellate court ruling to the Ohio Supreme Court alleging the following six propositions of law:

>**Proposition of Law No. I:** Where counsel fails to raise proper objections and pursues defective trial tactics which are foredoomed to failure, the defendant's right to the effective assistance of counsel under the state and federal constitutions has been violated.
>
>**Proposition of Law No. II:** Where the jury clearly lost its way in

>the fact finding process and a conviction is against the manifest weight of the evidence, reversal is required under a due process analysis.
>
>**Proposition of Law No. III:** Where appellate counsel overlooks significant and obvious issues of constitutional magnitude with a reasonable likelihood of success on appeal, such counsel is ineffective under the U.S. Constitution.
>
>**Proposition of Law No. IV:** Where the prosecutor in a criminal case argues facts not in evidence and misstates the law to the jury in closing arguments, due process is violated and reversal is required.
>
>**Proposition of Law No. V:** Where a trial court erroneously instructs a jury and the erroneous instruction prejudicially alters the burden of proof, the Fifth, Sixth and Fourteenth Amendments are violated and reversal is required.
>
>**Proposition of Law No. VI:** Where a legislative amendment to a statute that increases the penalty for a criminal act is used to increase the penalty subsequent to the date of the offense, but the change postdates the offense, the resulting penalty violates the Ex Post Facto Clause.

On February 7, 2007 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On February 6, 2008 the petitioner filed the instant petition, in which he raises the following three claims for relief:

>**A. GROUND ONE**: Ineffective assistance of counsel.
>
>**Supporting FACTS:** The instances of ineffectiveness of counsel relate to five (5) primary concerns: (1) the decision to allow Petitioner to take the stand in his own defense; (2) the decision to question Petitioner on direct examination in sordid detail about prior crimes and acts, which "opened the door" to the State's questioning about these same crimes and acts; (3) failure to object vigorously to questioning of Petitioner and other witnesses by the State; (4) failure to object to

misstatements of the State and erroneous jury instructions altering the burden of proof, requiring the jury to find Petitioner either "guilty or innocent"; and (5) failure to object to the imposition of a sentence greater than the maximum available under the statute existing at the time of commission of the offense, but amended before trial, in violation of the Ex Post Facto Clause.[2]

**B. GROUND TWO:** Prosecutorial misconduct

**Supporting FACTS:** The prosecutor made improper comments to the jury in closing arguments including misstating the law with regard to the definition of burden of proof by telling the jury that it had to find Petitioner either "guilty or innocent" (Trial T. Vol V p.30). The prosecutor further argued a erroneous definition of "trespass" (Trial T. Vol. V p.39-40). Finally the prosecutor argued the jury could consider Petitioner's Lucas County, Ohio conviction to impeach Petitioner's credibility, which is prohibited where such a conviction is under appeal. Additionally, the prosecutor vouched for the credibility of his own witness, the accuser, by telling the jury that "she told the truth" (Id.) and erroneously argued that Petitioner had plead guilty to a prior charge for a reduced charge and sentence which was neither the truth, nor what was testified to and was not the facts in evidence.

**C. GROUND THREE:** Erroneous jury instruction as to burden of proof.

**Supporting FACTS:** The trial court reinforced the misstatement of law given by the prosecutor by giving the same erroneous jury instruction that the jury find Petitioner either "guilty or innocent". The giving of this "guilt or innocence" instruction served to alleviate the burden of proof upon the prosecutor by erroneously advising the jury that they could not believe Petitioner to be "innocent" they must convict, rather than the correct legal standard of "no guilty." [sic]

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed

---

[2]The petitioner's lengthy factual support for each of the five stated concerns was omitted for purposes of listing the claims for relief, but was reviewed in full by this Court.

after the Act's effective date.  Lindh v. Murphy, 521 U.S. 320 (1997).[3]

At the outset, the respondent asserts that petitioner's second and third claims for relief, as well as subparts (4) and (5) of his first claim for relief, must be dismissed as procedurally defaulted as a consequence of petitioner's failure to present them on direct appeal to the Ohio Sixth District Court of Appeals.  They were, however, raised on appeal to the state supreme court.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326

---

[3]There are no issues of untimeliness in this case.

8

(6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim.  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim.  Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust.  Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).   Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).  However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal.  Gray v. Netherland, supra at 162;  Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money,

9

391 F.3d 804, 808 (6th Cir. 2004).

This Court has carefully reviewed petitioner's briefing on direct appeal (both his main brief on the merits and his reply brief) and agrees with the respondent's assertion that the issues raised in his second (prosecutorial misconduct) and third (trial court erroneously instructed jury) claims for relief, as well as subparts (4) (failure to object to prosecution's misstatements and erroneous jury instructions) and (5) (failure to object to sentence imposed) of his first claim for relief were not raised on direct appeal to the Ohio Sixth District, despite the fact that they could have been. It follows that those claims have been procedurally defaulted.

Petitioner would be unable to pursue relief on those claims in the state courts in light of the fact that he could have raised them on direct appeal, but did not, which causes them to be barred by the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). In turn, in light of the fact that the claims could have been but were not raised on direct appeal, petitioner would be barred from raising them in a delayed appeal or in a petition for post-conviction relief. Petitioner having failed to demonstrate cause or prejudice for the procedural default, or evidence of a miscarriage of justice, these claims for relief are procedurally defaulted and subject to dismissal.

Procedural default aside, the remaining subparts of petitioner's first claim for relief fail upon merits review.

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

10

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not

grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

Petitioner asserts that he was denied the effective assistance of trial counsel as a consequence of the following actions: (1) allowing the petitioner to take the stand; (2) questioning petitioner on direct examination as to his prior criminal acts; and (3) failing to "vigorously object" upon cross-examination to the prosecution's questions as to those prior acts.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair. Strickland v. Washington, 466 U.S. 668 (1984). See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985). Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689. Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999). The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability. Kimmelman v. Morrison, 477 U.S. 365 (1986).

The state appellate court rejected petitioner's claims of ineffective assistance of counsel in this regard, holding in pertinent part:

> The United States Supreme Court devised a two-prong test to determine ineffective assistance of counsel. *Strickland v.*

*Washington* (1984), 466 U.S. 668, 687. First, the defendant must show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution. Id. Deficient performance means performance falling below an objective standard of reasonable representation. Id.

Second, defendant must establish that counsel's "deficient performance prejudiced the defense." Id. To show that a defendant was prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. The failure to prove one prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, citing *Strickland* at 697.

Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 689. In Ohio, a properly licensed attorney is presumed competent. *State v. Lott* (1950), 51 Ohio St.3d 160, 174.

First, appellant argues that his counsel should not have allowed him to take the stand, and the decision to do so constituted ineffective assistance of counsel. Whether or not a defendant testifies is purely a tactical decision. *State v. Bey* (1999), 85 Ohio St.3d 487, 499, quoting *Brooks v. Tennessee* (1972), 406 U.S. 605, 612. Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion. *State v. Winchester*, 8th Dist. No. 79739, 2002-Ohio-2130, at ¶12, citing *Hutchins v. Garrison* (1983), 724 F.2d 1425, 1436 and *Lema v. United States* (1993), 987 F.2d 48, 52-53. Appellant neither alleges nor demonstrates that there was any coercion by his attorney to get him to testify.

Furthermore, an attorney does not have a duty to try and dissuade his client from testifying. The ultimate decision of whether a defendant will testify on his own behalf is the defendant's. *State v. Edwards* (1997), 119 Ohio App.3d 106, 109, quoting *Government of the Virgin Islands v. Weatherwax* (1996), 77 F.3d 1425, citing

*Jones v. Barnes* (1983), 463 U.S. 745, 751. The record indicates appellant felt compelled to testify in order to share his side of the story. During direct examination, he specifically stated, "I figured the only way the truth's going to come out is if I come up here [to the stand] and talk." As appellant has not shown any evidence of coercion, and the ultimate decision to testify was his own, we find that appellant's counsel did not fail in any duty to his client by permitting appellant to take the stand in his own defense.

Appellant next argues that his counsel should not have questioned him on direct examination about his prior crimes and acts. Appellant maintains that such questioning effectively "opened the door" to the state's questioning of these same crimes and acts.

Evid.R. 609(A)(2) provides, in pertinent part:

"For the purpose of attacking the credibility of a witness:

"* * *

"(2) Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted***."

"Evidence of other crimes which is permitted to come before the jury due to defense counsel's neglect, ignorance or senseless disregard of the defendant's rights and which bears no reasonable relationship to a legitimate trial strategy has been held to render the assistance of counsel ineffective." *State v. Martin* (1987), 37 Ohio App.3d 213, 214.

Appellant's trial counsel was neither negligent nor acting in disregard of appellant's rights in the introduction of evidence of other acts. The questioning of appellant's prior acts bore a reasonable relationship to a legitimate trial strategy. By choosing to take the witness stand, defendant placed his credibility in issue. See *State v. Porter* (1968), 14 Ohio St.2d 10. Because defendant chose to take the stand, his prior convictions were admissible under Evid.R. 609(A), and therefore, were likely to be brought out by the prosecution on cross-examination. See *State v. Milburn* (Aug. 24, 1993), 10th Dist. No. 89AP-655.

14

The court in *State v. Delgado* (June 11, 1992), 8th Dist. Nos. 60587, 60588, held that:

"A knowledgeable trial counsel in an attempt to diminish the impact of an accused's character on the jury when introduced by the prosecution, can preempt the prosecution by first introducing such a character trait. It is a trial tactic that we cannot consider unreasonable as a matter of law. An appellate court should not second guess a trial counsel's trial tactics based on the results of a trial since no one can precisely predict which tactics will succeed or fail in any particular case."

In *State v. Brown,* 5th Dist. No. 2003-CA-01, 2004-Ohio-3368, the court rejected a similar ineffectiveness claim, holding:

"In the case at bar, the defense was that the victim had consensual sex with appellant and therefore was lying about a rape. The credibility of the appellant and the victim were central to a determination of the issues. Accordingly, 'there was greater, not less compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed.' *State v. Goney* (1993), 87 Ohio App.3d 497, 502."

In this situation, defense counsel's decision to question defendant about his prior convictions was a reasonable, tactical decision intended to lessen the impact of defendant's prior convictions on the jury. *State v. Peoples* (1971), 28 Ohio App.2d 162, 168. It, therefore, cannot constitute ineffective assistance of counsel.

Appellant lastly contends that his counsel failed to object "vigorously" to the state's cross-examination of him and other witnesses, thereby constituting ineffective assistance of counsel.

A defendant "opens the door" to cross-examination on a particular subject when he raises it on direct examination as part of his theory of defense. *State v. Cockroft,* 10th Dist.No. 04AP-608, 2005-Ohio-748, at ¶15, citing *State v. Gowdy* (2000), 88 Ohio St.3d 387, 397. In the present case, appellant cannot open the door to the issue and then seek to close it right behind him. The state was clearly permitted to cross-examine appellant on the matters raised first by defense counsel on direct examination. See *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶98; *State v. Maurer,* 15 Ohio St.3d 239, 263 ("[a] witness may be properly cross-examined as to all relevant facts developed by the examination in chief").

Appellant, however, notes that such "door opening" interrogation is not without its limits, and that the state overstepped the provisions of Evid.R. 403.  Appellant cites to *State v. Hirsch* (1998), 129 Ohio App.3d 294, paragraph two of the syllabus, in support of his argument:

"Though evidence of a prior conviction\*\*\*was admissible, the state pursued an ill-advised strategy of eliciting great detail about that conviction as part of a clear attempt to paint the defendant as a violent, dangerous individual. 'Other acts' evidence is subject to the fairness requirements of Evid.R. 403(A)\*\*\*."

Nevertheless, similar to the court in *Hirsch*, we find that even where the prosecution's focus on every detail of the prior crimes nearly tips the balance that the probative value not be outweighed by the danger of unfair prejudice, where the "quantum of other evidence" against the defendant is great, the danger is minimized.  Id.  Furthermore, appellant failed to prove that, were it not for counsel's errors, the result of the trial would have been different.  *Bradley*, 42 Ohio St.3d 136, paragraphs two and three of the syllabus.

In Appendix B of his brief, appellant lists more than 100 questions posed by the state to appellant and other witnesses that he finds objectionable.  Most of the questions he alleges to be speculative, repetitive, or leading.  Appellant also argues that the state improperly inserted its own testimony while asking questions.

Evid.R. 611(C) states:

"(C) Leading questions.  Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.  Ordinarily leading questions should be permitted on cross-examination.\*\*\*"

It is within the discretion of the trial court to permit the state to ask leading questions of its own witnesses.  *State v. Miller* (1988), 44 Ohio App.3d 42, 45;  *State v. Madden* (1984), 15 Ohio App.3d 130, 133.  As to the court in *Miller*, 44 Ohio App.3d at 45, noted: "the exception 'except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court."  Of the many allegedly leading questions in this case, most of them were not leading, or were follow-up questions that clarified or summarized information the witness had already discussed.

16

> Moreover, it is well settled that trial counsel's failure to make objections are "within the realm of trial tactics" and do not establish ineffective assistance of counsel. *State v. Hunt* (1984), 20 Ohio App.3d 310, 311. In *Hunt*, the appellate court noted that the "mere failure to make objections which seem appropriate after the fact does not establish prejudicial error as a deprivation of the Sixth Amendment right to counsel. (Citation omitted.)" Id. Appellant's claim of ineffective assistance of counsel does not provide this court with carte blanche review of the trial tactics employed by counsel. *State v. Taylor* (Sept. 30, 1999), 6th Dist.No. L-98-1377. If appellate courts second-guessed every strategy employed at each phase of a jury trial, the process of truth-seeking would grind to a halt. Id.
>
> After a careful review of the record, we are not convinced that the trial result would have been any different had counsel conducted the trial in the ways not argued by appellant. Appellant has failed to prove that his counsel fell below an objective standard of reasonable representation and has failed to show any prejudicial result. Further, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.\*\*\*" *Strickland*, 466 U.S. at 700. Accordingly, appellant's first assignment of error is found not well-taken.

This Court finds that the state appellate court's conclusion that petitioner had not provided adequate evidence of ineffective assistance of counsel did not amount to an objectively unreasonable application of the rule of Strickland to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly in light of petitioner's own actions during the course of his trial when he indicated that he felt compelled to testify as it was "the only way the truth's going to come out[.]" This Court agrees that considering petitioner's decision to testify, it was a permissible matter of trial strategy, i.e. "the best defense is a good offense," to question him about his prior convictions in order to lessen their impact on the jury, as was the decision not to "vigorously object" to the prosecution's questioning in that regard on cross examination after the door to such questioning had been opened by the defense.

Consequently, subparts (1) through (3) of petitioner's first claim for relief are without merit.

The balance of petitioner's claims for relief having been procedurally defaulted, in light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is, therefore, recommended that the petition be dismissed without further proceedings.


                                                            s/DAVID S. PERELMAN
                                                            United States Magistrate Judge


DATE:   June 3, 2009


**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).